In The United States District Court
For the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| TIFFANY WILCOMB, as Independent Administrator of the Estate of JAMI NICOLE GAUBATZ, | § § § § § | |
| Plaintiff | § § | Civil Action No. _____ |
| v. | § § | |
| CITY OF HOUSTON, HOANG TRAN, CHARLES FARMER, KEVIN TABORA, CLIFTON HOLLOWAY, PAUL TERRY, and SYLVIA LOPEZ, | § § § § § § | |
| Defendants | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff TIFFANY WILCOMB, as Independent Administrator of the Estate of JAMI NICOLE GAUBATZ complaining of the CITY OF HOUSTON, HOANG TRAN, CHARLES FARMER, KEVIN TABORA, CLIFTON HOLLOWAY, PAUL TER-

RY, and SYLVIA LOPEZ and for cause of action would show the following:

## A. Introduction

1. This case is about the Houston Police Department (HPD) and the July 26, 2015 in-custody death of a woman, Jami Nicole Gaubatz, who needed medical attention. HPD delayed in doing anything to help Ms. Gaubatz; instead, HPD attempted to arrest and book her for public intoxication rather than taking her to obtain medical treatment. She died as a result. This case is about police officers subjecting a young woman to unlawful and unconstitutional actions and also the City of Houston's policies that led to Jami's death. Accordingly, this action is brought for violations of the United States Constitution and Texas law. The Defendants violated Jami's rights under the Fourth Amendment of the United States Constitution by using excessive force when attempting to arrest, seize, search, or make an investigatory stop of her. And so Plaintiff brings

this action for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and severally deprived Jami of her constitutionally-guaranteed and federally-protected right to be free from unreasonable seizure and unreasonable and excessive force. U.S. Const. amend. IV. She also brings this suit for personal injuries actionable under Texas law for harm suffered by Plaintiff as a result of the unreasonable search and seizure, personal injury, and wrongful death of Plaintiff's decedent, Jami Nicole Gaubatz.

2. At the time of her death, Jami Nicole Gaubatz was 29 years old. Plaintiff Tiffany Wilcomb was the aunt of Jami Gaubatz; she is now the independent administrator for Jami Gaubatz's estate. She brings this action on behalf of the estate pursuant to the Texas Wrongful Death/Survival Statute, TEX. CIV. PRAC. & REM. CODE § 71.021 and as applied through 42 U.S.C. §§ 1983, 1988.

3. As a direct result of the policies, practices, customs, usages, and procedures of the City of Houston, Decedent Jami Gaubatz

was deprived of her constitutional rights to be free from unreasonable searches and seizures and excessive force. These rights are guaranteed by the Fourth Amendment and applied to the several states through the incorporation of the Fourth Amendment into the Fourteenth Amendment of the United States Constitution. Wolf v. Colorado, 338 U.S. 25, 27–28 (1949).

4. Defendants Hoang Tran, Charles Farmer, Kevin Tabora, Clifton Holloway, Paul Terry, and Sylvia Lopez (Officer Defendants), City of Houston police officers acting in the course and scope of their employment with the City, and acting under color of state law, subjected to Jami Gaubatz to excessive force. Jami died as a result of their unconstitutional acts; and as a result of the City's policies with respect to detention and arrest of persons who need medical attention.

## B.  Jurisdiction and Venue

5.      This Honorable Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because the matter arises under the Constitution, laws, or treaties of the United States; specifically this claim seeks rights and remedies provided by the United States Constitution and 42 U.S.C. §§ 1983, 1988. See also 28 U.S.C. § 1331(a)(3).

6.      Supplemental jurisdiction over the pendant state-law claims is proper under 28 U.S.C. § 1367(a) because the state-law claims form a part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(c) because all defendants reside in Texas and one or more defendants reside in this judicial district and, more specifically, this division of this judicial district. Further, as provided under 28 U.S.C. § 1391(b)(2), a substantial part of the events or

omissions giving rise to the claims herein occurred in this judicial district.

## C. Parties

8. Plaintiff TIFFANY WILCOMB is a resident of Texas. Plaintiff resides in Cypress, Harris County, Texas. Plaintiff was a permanent resident of the State of Texas when the events or omissions giving rise to this lawsuit occurred. Plaintiff was the aunt of decedent JAMI NICOLE GAUBATZ. The events giving rise to this lawsuit culminated with the death of JAMI NICOLE GAUBATZ. Accordingly, Plaintiff TIFFANY WILCOMB brings this suit in her capacity as the Representative of the Estate of JAMI NICOLE GAUBATZ.

9. Decedent, JAMI NICOLE GAUBATZ, was a resident of Texas at the time HPD officers detained her, arrested her, and caused her death.

10. Defendant CITY OF HOUSTON is a municipal corporation operating according to the Constitution and the laws of Texas. It is

located within the United States Southern District of Texas. The City of Houston may be served with process by serving the City Secretary, 900 Bagby, Houston, Texas 77002.

11. Defendant HOANG TRAN is a resident of Texas. Defendant Tran may be served in person at 1200 Travis Street, Houston, Texas 77002.

12. Defendant CHARLES FARMER is a resident of Texas. Defendant Farmer may be served in person at 1200 Travis Street, Houston, Texas 77002.

13. Defendant KEVIN TABORA is a resident of Texas. Defendant Tabora may be served in person at 1200 Travis Street, Houston, Texas 77002.

14. Defendant CLIFTON HOLLOWAY is a resident of Texas. Defendant Holloway may be served in person at 1200 Travis Street, Houston, Texas 77002.

15.     Defendant PAUL TERRY is a resident of Texas. Defendant Terry may be served in person at 1200 Travis Street, Houston, Texas 77002.

16.     Defendant SYLVIA LOPEZ is a resident of Texas. Defendant Lopez may be served in person at 1200 Travis Street, Houston, Texas 77002.

## D.  Facts

17.     On or about July 26, 2015, uniformed City of Houston Police Officers took custody of Jami Nicole Gaubatz at approximately 1:20 p.m. According to reports, HPD responded to a suicide call at an apartment in Northwest Houston.

18.     Despite apparent signs of mental or emotional distress, Ms. Gaubatz was handcuffed and made to sit on the ground. Temperatures in Houston that midsummer day were sweltering — reaching the high 90s.

19. Ms. Gaubatz was left to sit handcuffed until approximately 2:40 p.m. (some approximately one hour and 20 minutes after the officers arrived at the scene).

20. At approximately 2:40 p.m., Ms. Gaubatz was taken from where she was sitting outside and handcuffed, without water or other protection from the sun and heat to the back of an HPD patrol car.

21. HPD determined she would be arrested and booked for public intoxication. HPD left the scene with Ms. Gaubatz in the back of their patrol car at approximately 2:40 p.m.

22. Between 2:40 p.m. and 3:10 p.m., HPD apparently transported Ms. Gaubatz from the apartment complex in northwest Houston to the Southeast Jail located at 8300 Mykawa.

23. Upon arrival at 8300 Mykawa, at approximately 3:10 p.m., Ms. Gaubatz was found by HPD officers to be unresponsive.

24. At approximately 3:43 p.m., HFD/EMS arrived at 8300 Mykawa in response to a call to treat Ms. Gaubatz.

25. At approximately 4:10 p.m., HFD/EMS left 8300 Mykawa and transports Ms. Gaubatz to Ben Taub Hospital, where they and she arrive at approximately 4:27 p.m.

26. Efforts to revive Ms. Gaubatz fail; she was pronounced dead at 4:49 p.m.

27. This incident was not the first in-custody death for HPD in 2015.

28. Reports indicate that, in all, between 2010 and 2015, 112 individuals lost their lives while in custody of HPD. Those same reports indicate that 99 of the 112 persons who died, including Jami Gaubatz, had not been charged with a crime. According to the autopsy, Ms. Gaubatz died of a drug intoxication.

29.     Ms. Gaubatz was at least the 19th person since January 2010 reported to have died from alcohol or drug intoxication while in the custody of the Houston Police Department.

### E.  Causes of Action

### 1. PLAINTIFF'S CIVIL-RIGHTS CLAIMS

30.     Plaintiff incorporates all preceding paragraphs by reference.

31.     The Ku Klux Klan Act of 1871 and its revisions, partially codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

32.     Plaintiff alleges that Defendants, jointly, severally, or both, deprived Plaintiff's decedent of her Fourth Amendment rights as

11

incorporated and applied to the states through the Fourteenth Amendment.

33.     Defendants violated Decedent's rights in the following ways:

a. By using excessive force in the course of the Officers' attempt to seize, arrest, search, or make an investigatory stop of the Decedent. This excessive force was a violation of the Fourth Amendment and its standard of reasonableness.

b. By failing to provide proper supervision to prevent such incidents of excessive force;

c. By failing to provide proper training to prevent such incidents of excessive force; and

d. By adopting polices that caused Decedent's death in violation of his Fourth Amendment rights.

34.     Defendants' violations of the Constitutional rights of Decedent resulted in Decedent's suffering and death and were a direct cause of Plaintiff's injuries.

(A) PLAINTIFF'S FIRST CLAIM: 42 U.S.C. § 1983 — PEACE-OFFICER LIABILITY:

35.     Plaintiff incorporates all preceding paragraphs by reference.

36. Plaintiff brings a claim against Officer Defendants, individually, pursuant to 42 U.S.C. § 1983. With her § 1983 claim, Plaintiff seeks punitive damages against Officer Defendants for intentional, willful, wanton, and unreasonable deprivation of Jami Gaubatz's rights, privileges, and immunities secured by the U.S. Constitution and federal law.

37. As a result of Officer Defendants' violations of Jami Gaubatz's constitutional rights, Jami Gaubatz suffered substantial injuries, including but not limited to physical injury, pain and suffering, mental anguish, damages and, ultimately, death.

38. Jami Gaubatz exercised her rights, or attempted to do so, under the United States Constitution.

39. Officer Defendants deprived Jami Gaubatz of her rights guaranteed by the U.S. Constitution and federal statutes.

40. As a direct and proximate result of the foregoing, Officer Defendants, individually, and as agents/employees of the City of Hou-

ston, deprived Jami Gaubatz of her rights and privileges as a citizen of the United States, and Officer Defendants caused Jami Gaubatz to suffer injury and death, of which has caused the general damages requested by Plaintiff in an amount in excess of the applicable jurisdictional amount, as will be proven at trial.

41.     The claims and causes of action for injuries to the health, reputation, and person sustained by Jami Gaubatz are brought by Plaintiff in this action pursuant to Texas Civil Practices & Remedies Code § 71.021.

## (B) PLAINTIFFS SECOND CLAIM: 42 U.S.C. § 1983 — MUNICIPAL LIABILITY

### a. The City of Houston's Policies Caused Constitutional Injury to Jami Gaubatz.

42.     Plaintiff incorporates all preceding paragraphs by reference.

43.     The Officer Defendants' constitutional violations committed against Jami Gaubatz implemented or executed a policy statement,

ordinance, regulation, or decision officially adopted and promulgated the City's official policy makers.

44. And so the City's policy statements, ordinances, regulations, or decisions that were adopted and promulgated by the City's official policy makers caused the constitutional violation to Jami and caused Jami's death.

45. The City is liable for the constitutional torts of its Officer Defendants because the City sanctions the following nonexclusive list of customs, practices, and policies:

a. Using excessive, and often deadly force to carry out otherwise routine arrests, searches, and seizures;

b. Arresting and booking (or attempting to book) individuals who need medical attention as opposed to law enforcement intervention;

c. Ignoring the serious need for training and supervision of officers with respect to when to seek medical treatment for individuals instead of arresting them — or the need for new or additional training and supervision that, in light of the duties assigned to the City's officers and their previous wrongful conduct,

was so obviously needed that not providing it amounted to deliberate indifference;

d. Adopting training regimes unsuited to prepare officers to adequately reach medical solutions for persons requiring medical attention;

e. Failing to properly investigate in-custody injuries and deaths;

f. Failing to discipline officers who arrest individuals they should refer to medical treaters;

g. Failing to train officers about how to handle people who are suspected of being mentally ill or who otherwise require medical attention;

h. Using procedures to investigate complaints of official misconduct designed to prevent detecting official misconduct;

i. Establishing a code of silence, where officers are discouraged from pointing out the wrongful conduct of other officers;

j. Failing to adequately discipline or discharge officers who have shown a pattern or practice of using excessive force;

k. Promoting officers accused of misconduct at a higher rate than officers not so accused; and

l. Instituting policies that prevent the City, County, State, and Federal Government from adequately investigating in-custody deaths.

### b. The City of Houston has a Pattern and Practice of Authorizing and Allowing Excessive Force.

46.     Plaintiff incorporates all preceding paragraphs by reference.

47.     The City of Houston is liable under 42 U.S.C. § 1983 for exonerating officers who use excessive force. The City has a general official policy, pattern, practice, custom or usage of not disciplining its police officers for their excessive force, thereby sanctioning such actions by its police officers. By deciding not to discipline its police officers, the City has created a de facto policy or policy by implication of overlooking constitutional violations and a culture, custom, and usage of reckless, dangerous policing. This caused or was the moving force behind Jami's death.

48.     The City's failure to supervise its police officers, its refusal to take disciplinary action against them for using excessive force, and/or its pattern and practice of helping to conceal the use of ex-

cessive force by its officers created a sense of impunity and a culture of reckless, dangerous policing among HPD's officers that caused Jami's death.

49. Municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even absent an officially adopted policy, the practice may be so well entrenched that it fairly represents an official municipal policy. See Bd. of County Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).

50. Here, the City's formal and informal actions in overlooking, hiding, and tacitly encouraging police misconduct through other officers, the Internal Affairs Division, the Houston Police Chiefs, the Homicide Division, as wells as a line of mayors, reflect an official policy, practice, custom, usage, and procedure — a policy which authorized and allowed the use of excessive force that violated the constitutional rights of Jami Gaubatz and caused her death.

### c. The City Failed to Train or Supervise Defendant Officers.

51. Plaintiff incorporates all preceding paragraphs by reference.

52. A city's police officers often encounter those suffering from mental illness or those otherwise requiring medical attention. Indeed, police officers encounter those with mental illness often enough that if police officers are not properly trained on how to handle people with mental illness it is highly predictable that constitutional violations will occur to the citizens of the municipality as a result. It is so predictable that not properly training officers to deal with people with mental illness or how to identify those needing medical attention is tantamount to deliberate indifference to the constitutional rights of the inhabitants of the municipality.

53. The City of Houston was aware that it was highly predictable that its officers would encounter individuals like Jami Gaubatz, and

that if they weren't adequately trained the citizens of Houston would suffer constitutional injuries because of the inadequacy of their training.

54.    It was so predictable that the City implemented its Crisis Intervention Training (CIT) Program.

55.    The CIT Program mandated HPD officers undergo 40 hours of training on how to deal with the mentally ill.

56.    This training was inadequate — so inadequate that keeping it in place amounted to deliberate indifference to the constitutional rights of the City of Houston's citizens.

57.    By itself this training was patently inadequate, so inadequate that its implementation amounts to deliberate indifference to the constitutional rights of the citizens of Houston.

58.    Further, the City was put on notice that a new training program was necessary by the prior constitutional violations of the city's CIT-trained officers against the mentally ill.

59. The City's acts and omissions, when viewed objectively, involve an unacceptable degree of risk, considering the probability and magnitude of the harm to the City's citizens. The City had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Jami Gaubatz.

60. Consequently, the City's failure to train or supervise Officer Defendants constitutes deliberate and conscious indifference to the rights, safety, and welfare of others, including Jami Gaubatz.

### d. The City's Policy and Custom of Dangerous Recklessness.

61. Plaintiff incorporates all preceding paragraphs by reference.

62. The subsequent acceptance of dangerous recklessness by the policy maker tends to show the policy maker's disposition and policy.

63. That is, the City of Houston's de facto policy of dangerous and reckless policing is shown by the fact that the City accepted Officer Defendants' use of excessive force.

64. After the in-custody death of Jami Gaubatz, the City took no disciplinary action against Officer Defendants.

65. But the City did more than fail punish its officers. It concealed their wrongdoing.

66. The subsequent acceptance of the Officer Defendants' dangerous and reckless policing — as shown by its refusal to punish them and its efforts to conceal their and its wrongful conduct — proves that reckless, dangerous policing was the preexisting disposition and policy of the city.

67. This preexisting disposition was the cause of and moving force behind Officer Defendants' constitutional violations of Jami Gaubatz's constitutional rights and her death.

### F. Damages

68.     Plaintiff incorporates all preceding paragraphs by reference.

69.     In addition to the damages mentioned in the above paragraphs sustained as a direct and proximate result of the intentional and unlawful conduct of Defendants, Jami Gaubatz suffered damages, as described in the following paragraphs. See TEX. CIV. PRAC. & REM. CODE § 71.001 et seq.

70.     Plaintiff Tiffany Wilcomb, as Representative of the Estate of Decedent Jami Nicole Gaubatz, brings this survival action pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021 as applied through 42 U.S.C. §§ 1983, 1988. As a direct and proximate result of Defendants' tortious acts and omissions, Decedent suffered pain and mental anguish from the time of the arrest until the time of her death. Decedent also incurred funeral expenses. This claim does not abate because of the death of Decedent and such claim is hereby made.

### G. Attorney's Fees

71. The Civil Rights Attorney's Fee Award Act of 1976 entitles Plaintiff to recover her attorney's fees and costs. 42 U.S.C. § 1988. Plaintiff thereby requests that the Court and jury award her attorney's fees and expenses.

### H. Jury Demand

72. Plaintiff respectfully demands a jury trial pursuant to FED. R. CIV. P. 38(b).

### I. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that Plaintiff have judgment against Defendants, jointly and severally, for actual damages above the jurisdictional minimum of the Court, exemplary damages against all individual defendants, pre- and post-judgment interest, costs of court, attorney's fees and

expenses, and all other and further relief to which Plaintiff is justly entitled, both at law and in equity.

Respectfully submitted,

THE FAUBUS FIRM

By:  /s/ Dax O. Faubus
Dax O. Faubus
Attorney in Charge
Federal Bar No. 24136
Texas Bar No. 24010019
1001 Texas Avenue, 11th Floor
Houston, Texas 77002
(713) 222-6400 – Telephone
(713) 222-7240– Facsimile
dax-notice@faubusfirm.com

**Of Counsel:**

Joseph C. Melugin
Federal Bar No. 876851
Texas Bar No. 24054038
joe@faubusfirm.com
THE FAUBUS FIRM

**ATTORNEYS FOR PLAINTIFF**