UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY WILCOMB, § | | |
| AS INDEPENDENT ADMINISTRATOR OF § | | |
| THE ESTATE OF JAMI NICOLE GAUBUTZ, § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION H-17-1866 |
| § | | |
| CITY OF HOUSTON, *et al.*, § | | |
| § | | |
| *Defendants*. § | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss filed by defendants City of Houston (the "City"), Sergeant Paul Terry, Officer Hoang Tran, Officer Charles Farmer, Officer Kevin Tabora, and Officer Sylvia Lopez (collectively, "Defendants").[1] Dkt. 12. Plaintiff Tiffany Wilcomb responded. Dkt. 15. Defendants replied. Dkt. 17. Having considered the motion, response, reply, and applicable law, the court is of the opinion that: (1) the motion should be GRANTED in part and DENIED in part and (2) that Wilcomb should be GRANTED leave to amend her complaint.

**I. BACKGROUND**

This is a civil rights case arising out of the death of twenty-nine year old Jami Nicole Gaubatz.[2] Dkt. 1 at 3. Gaubatz's aunt, Wilcomb, brings this suit as the independent administrator of her late niece's estate. *Id.*

---

[1]The court will refer to the Houston Police Department ("HPD") officer defendants as "officers."

[2]For the purposes of a motion to dismiss, the court accepts all well-pled facts contained in Wilcomb's complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

On July 26, 2015, the officers responded to a suicide call at an apartment in Houston.[3] *Id.* at 8. When the officers arrived, Gaubatz seemed distressed. *Id.* At 1:20 p.m., the officers handcuffed Gaubatz and told her to sit down. *Id.* at 9; Dkt. 15 at 2 n.7. She sat outside in unobstructed sunlight for an hour and twenty minutes while the temperature averaged 100.4 degrees Fahrenheit with a heat index of 106.3 degrees Fahrenheit. *Id.* Later, the officers put her in a patrol car and decided to arrest and book her for public intoxication. Dkt. 1 at 9. At 2:40 p.m., the officers drove Gaubatz to a jail. *Id.* When they arrived there at 3:10 p.m, she was unresponsive. *Id.* At 3:43 p.m., an ambulance arrived. *Id.* at 10. At 4:10 p.m., the ambulance took her from the jail to a hospital where it arrived at 4:27 p.m. *Id.*

At 4:49 p.m., before being charged with a crime, Gaubatz died from drug intoxication. *Id.* at 10–11. The City did not discipline the officers. *Id.* at 22. Additionally, it "concealed their wrongdoing." *Id.*

Between 2010 and 2015, 112 individuals died in HPD custody. *Id.* at 10–11. However, HPD never charged ninety-nine of those individuals (including Gaubatz) with a crime. *Id.* And, Gaubatz's death marked the nineteenth in-custody death due to alcohol or drug intoxication. *Id*. According to Wilcomb, the City "overlook[s], hid[es], and tacitly encourag[es] misconduct through other officers, the Internal Affairs Division, the Houston Police Chiefs, the Homicide Division, as well as a line of mayors . . . ." *Id.* at 18. Additionally, the City "was aware that it was highly predictable that its officers would encounter individuals like Jami Gaubatz . . . ." *Id.* at 19. And, the City requires all HPD officers to spend forty hours learning "how to deal with the mentally ill" through a Crisis Intervention Training Program. *Id.* at 20.

---

[3]From the complaint, the court cannot determine who tried to commit suicide.

Wilcomb sues Defendants for Fourth Amendment violations, damages under 42 U.S.C. § 1983, personal injuries, and wrongful death. *Id.* at 11–22. Defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 12.

## II. Legal Standard

Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the nonmovant has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a plaintiff must plead "'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Ultimately, the question for a court to decide is whether the

complaint states a valid claim when viewed in the light most favorable to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012).

## III. ANALYSIS

Wilcomb alleges that Defendants violated Gaubatz's Fourth Amendment rights by: (1) using excessive force when the officers attempted to seize, arrest, search, or make an investigatory stop of Gaubatz; (2) failing to provide proper supervision to prevent such incidents of excessive force; (3) failing to provide proper training to prevent such incidents of excessive force; and (4) adopting policies that caused Gaubatz's death. Dkt. 1 at 12. Wilcomb alleges two separate § 1983 claims: one for peace-officer liability (against the officers in their individual and official capacities) and one for municipal liability. *Id.* at 12, 14.

### A. Applicable law

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting 42 U.S.C. § 1983)). To state a § 1983 claim, Wilcomb must: (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Id.* Municipalities and cities qualify as "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018 (1978)).

"The Fourth Amendment prohibits 'unreasonable . . . seizures.'" *Windham v. Harris County*, 875 F.3d 229, 239 (5th Cir. 2017) (quoting U.S. Const. amend. IV).[4] "A seizure is generally reasonable only if justified by an individualized suspicion of wrongdoing . . . and only if carried out

---

[4]No one disputes that Gaubutz's detention counts as a "seizure" under the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 16. 88 S.Ct. 1868 (1968) (explaining that a "seizure" occurs when a police officer restrains a persons freedom to walk away).

in a reasonable manner . . . [and] without the use of excessive force." *Id.* at 239, 242 (internal citations omitted). "Officers who conduct unreasonable seizures in violation of clearly established law may be liable under 42 U.S.C. § 1983."[5] *Id.* at 241. In addition, "local governments may be liable if their policies or customs caused the violation." *Id.* (citing *Monell*, 436 U.S. at 690–91).

"To prevail on an excessive force claim, a plaintiff must show (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Windham*, 875 F.3d at 242 (internal quotation omitted). "Whether a use of force is reasonable must be judged from the perspective of a reasonable officer on the scene." *Id.* (internal quotation omitted).

### B. Wilcomb's claims against the officers

Wilcomb alleges that: "the officers violated the Fourth Amendment by using excessive force in their 26 July attempts to seize, arrest, or make an investigatory stop of Ms. Gaubatz." Dkt. 1 at 8–10; Dkt. 15 at 7. Wilcomb alleges that the violations occurred when the officers ignored signs of Gaubatz's mental distress after they responded to a suicide call. *Id.* Wilcomb asserts that the

---

[5]In *Kentucky v. Graham*, the Supreme Court explained how personal-capacity suits and official-capacity suits differ:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects, other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165–166, 105 S.Ct. 3099 (1985); *see also Rayborn v. Bossier Par. Sch. Bd.*, No. 16-30903, 2018 WL 670489, at *1, *5 (5th Cir. Feb., 2, 2018).

5

officers should have taken Gaubatz to get medical attention. *Id.* Instead, the officers chose to detain her for eighty minutes in extreme heat before arresting her. *Id.*

### 1.  *Personal-capacity suit*

Defendants argue that qualified immunity bars Wilcomb's claims against the officers and that Wilcomb fails to allege a Fourth Amendment violation. Dkt. 12 at 4–5.

#### a.  Fourth Amendment violation

As an initial matter, the parties disagree about whether Defendants' assertion of qualified immunity alters the pleading standard governing Wilcomb's complaint. Dkt. 12 at 5; Dkt. 15 at 6. Defendants assert that a "heightened pleading requirement" applies. Dkt. 12 at 5 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)). Conversely, Wilcomb argues for the general pleading standard. Dkt. 15 at 6 (citing *Anderson v. Valdez*, 845 F.3d 580, 589–590 (5th Cir. 2016)). The court agrees with Wilcomb. *See Valdez*, 845 F.3d at 589–590. *Valdez* explained that:

> when, as here, a qualified immunity defense is asserted in . . . [a] motion to dismiss, 'the district court must'—as always—do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone. In so doing, we expressly require[] the district court to apply 'Rule 8(a)(2)'s 'short and plain standard. After applying this general pleading standard . . . 'the court *may [then], in its discretion*, insist that plaintiff file a reply tailored to [the defendant's] . . .[motion to dismiss] pleading the defense of qualified immunity.

*Id.* (emphasis in original) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995)). Thus, the general pleading standard governs the court's review of Wilcomb's complaint. *See id.* at 590, n.17.

Wilcomb meets the Rule 8(a)(2) standard as it applies to her claim that the officers violated the Fourth Amendment by using excessive force. *See Windham*, 875 F.3d at 242. Exposure to

6

extreme temperatures can support a claim for excessive force. *See Burchett v.* Kiefer, 310 F.3d 937, 946 (6th Cir. 2002); *but see Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).[6]

In *Burchett*, the Sixth Circuit determined that detention for three hours in an unventilated car in ninety-degree heat constituted excessive force. *Id.* at 945 (relying on *Hope v. Pelzer*, 563 U.S. 730, 738 122 S.Ct. 2508 (2002)). The *Burchett* plaintiff experienced "extreme discomfort" from the heat. *See id.* at 940. And, although the air conditioning worked, the officers turned it off after putting the plaintiff inside. *Id.* at 940, 945. Additionally, the officers refused the plaintiff's requests to roll down a window or turn on the air. *See id.*

In finding a claim for excessive force, *Burtchett* explained that:

> The Supreme Court has noted that under certain circumstances unnecessary exposure to the heat of the sun . . . can violate the Eighth Amendment's prohibition on unnecessary and wanton infliction of pain. Such actions *a fortiori* violate the Fourth Amendment, which requires a showing of objective reasonableness rather than any particular subjective motivation.

*Id.* (internal quotation omitted).[7] *Burchett* also noted that "the officers had many equally effective

---

[6]In *Glenn*, the Fifth Circuit addressed an unreasonable seizure claim based on extreme temperature exposure. *See* 242 F.3d at 314. *Glenn* held that an arrest did not amount to an unreasonable seizure when police left the plaintiff in an unventilated vehicle in the sun for thirty minutes before driving her to jail. *Id.* In that case, heat exposure exacerbated the plaintiff's Multiple Sclerosis. *Id.* Further, she declined an offer to go to a hospital. *Id.* And, she knew that an ambulance was present but did not ask for medical attention. *Id. Glenn* does not control this case because it is factually distinguishable. *See id.* Unlike in *Glenn*, the first and only attempt to get medical attention for Gaubatz came after she was already unresponsive. *See* Dkt. 1 at 8–10.

[7]In considering whether temperature exposure counts as a constitutional violation, courts have considered several factors including: the duration of exposure, voluntariness of remaining in those temperatures, and whether an injury is alleged. *Compare Burchett*, 310 F.3d at 645 (plaintiff stated a claim for constitutional violation when police detained him in an unventilated car for three hours in extreme heat), *and Kassab v. San Diego Police Dep't*, 453 F. App'x 747, 748 (9th Cir. 2011) (reversing grant of summary judgment when police detained plaintiff in an unventilated car for more than four hours with an interior temperature of 115 degrees Fahrenheit, and plaintiff suffered from heat stroke, had difficulty breathing, and almost passed out), *with Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (no violation when plaintiff merely asserted that he was outside for an hour in the cold during police investigation and provided no evidence that the

7

ways of detaining [plaintiff] that would not have subjected him to excessive heat . . . ." 310 F.3d at 945.

Like in *Burchett*, Wilcomb alleges that the officers injured Gaubatz by detaining her in extreme heat. *See id.*; Dkt. 1 at 9–10; Dkt. 15 at 2 n.7. Because experiencing "extreme discomfort" from heat exposure was enough to state an excessive force claim in *Burchett*, then Gaubatz's unresponsiveness after similar heat exposure is as well. *Compare* 310 F.3d at 940, *with* Dkt. 1 at 9–10.

Defendants argue that because Gaubatz was arrested for public intoxication and died from drug intoxication, Wilcomb cannot allege "facts [showing] that force was excessive to the need and was the direct and only cause of Ms. Gaubatz's death." Dkt. 17 at 2. Defendants incorrectly assume that Gaubatz's death is the only injury Wilcomb alleges. *See id.* Wilcomb also alleges that soon after the eighty-minute detention in extreme heat ended, Gaubatz became unresponsive. Dkt. 1 at 9–10. For purposes of the instant motion, unresponsiveness as an injury disposes of Defendants' challenge to the first and second prongs of Wilcomb's excessive force claim. *Cf. Windham*, 875 F.3d at 242–43.

In *Windham*, the Fifth Circuit analyzed whether giving a driver a gaze nystagmus test when that driver had a neck condition counted as excessive force when the officers knew about the

---

officer forced him to remain outside), *and Glenn*, 242 F.3d at 314 (no violation when police left plaintiff in an unventilated vehicle in the heat for thirty minutes but she refused a hospital visit and did not ask for medical attention), *and Sequeira*, 2017 WL 1197296, at *7 (no violation when plaintiff was exposed to below-freezing temperatures for sixteen minutes while police administered sobriety tests), *and Joseph v. City of Cedar Hill Police Dep't*, 3:15-CV-2443-K-BK, 2016 WL 1554270, at*1,*3, (N.D. Tex. Mar. 21, 2016) (no violation when plaintiff was detained in unventilated car for twenty minutes at night in heat when plaintiff alleged no physical injury and declined medical attention), *and Nimkoff v. Hollahausen*, 751 F. Supp. 2d 455, 461 (E.D.N.Y. 2010) (no violation when police detained plaintiff in a police car for twenty to thirty minutes in extreme heat), *and Esmont v, City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (no violation when suspect was left in hot, unventilated squad car for ten minutes and did not allege she suffered physical injury).

condition. *See id.* The court explained that "but for [the driver's] neck condition. . . administration of the test would have been a perfectly reasonable exercise of authority." *Id.* However, even though the officers knew of the condition, "no reasonable jury could find that the officers should have been on notice that [the] neck condition was such that [the driver] would suffer injury if [the officer] administered the test." *Id*. Here, like in *Windham*, the visible signs of distress put the officers on notice that Gaubatz needed medical attention. *See* Dkt. 1 at 9–10. But, unlike in *Windham*, Gaubatz's intoxicated state does not transform detention in extreme heat for eighty minutes into a perfectly reasonable exercise of authority. *Compare* 875 F.3d at 243, *with* Dkt. 1 at 9–10. Instead, a reasonable jury could find that any person, whether in distress or intoxicated, might suffer injury if detained under those conditions. *See id.*

Further, from the perspective of the reasonable officer on the scene, exposing Gaubatz to extreme heat was objectively unreasonable. *Compare* 310 F.3d at 945, *with* Dkt. 1 at 9–10. The officers arrived at Gaubatz's apartment because of a suicide call. Dkt. 1 at 9–10. They saw her exhibit signs of distress before they detained her. *Id.* And, instead of seeking medical attention, the officers detained Gaubatz in extreme temperatures for eighty minutes. *Id.* The officers do not: (1) dispute that it was extremely hot when they detained Gaubatz; or (2) give a reason for detaining her outside for eighty minutes instead of inside a ventilated car (or even a car with a window cracked). Dkts. 12, 17. For these reasons, the court disagrees with Defendants' bald assertion that "[Wilcomb's] Fourth Amendment claims of excessive force . . . are without any factual basis." *See* Dkt. 17 at 2. Thus, Wilcomb states a claim for excessive force and dismissal under Rule 12(b)(6) is not warranted.

  b. *Qualified immunity*

Next, the court must determine whether qualified immunity bars Wilcomb's excessive force claim. Qualified immunity "protects government officials from civil damages liability when their

actions could reasonably have been believed to be legal." *Whitley*, 726 F.3d at 638 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). To overcome qualified immunity, Wilcomb must show: "(1) that the official violated a statutory or constitutional right and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.*

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074 (2011) (internal quotation omitted) (citing *Creighton*, 483 U.S. at 640). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *See id.*

Defendants are not entitled to qualified immunity. *Contra* Dkt. 12 at 4–5. For qualified immunity purposes, it is clearly established that exposure to extreme temperatures violates the Fourth Amendment's prohibition on unreasonable searches and seizures.[8] *See Burchett*, 310 F.3d at 945; *cf. Sequeira v. McClain*, Civil Action No. 15-cv-02587-PAB-MEH, 2017 WL 1197296, at *1, *7 (D. Colo. Mar. 31, 2017) (distinguishing *Burchett*, 310 F.3d at 945). And, it was clearly established when the officers detained Gaubatz. *See Burchett*, 310 F.3d at 945; *see also* Dkt. 1 at 9–10. Thus, Wilcomb meets the "clearly established" prong.

Next, Wilcomb meets the remaining prong because she alleges sufficient facts to show that officials violated Gaubatz's constitutional rights. *See supra* Section III(B)(1)(a). Because Wilcomb meets both prongs, Defendants are not entitled to qualified immunity. Thus, qualified immunity fails as a basis for a Rule 12(b)(6) dismissal.

---

[8]The court addresses the "clearly established" prong first because "[a] court has discretion to decide which prong to consider first." *Whitley*, 726 F.3d at 638.

2.  *Official-capacity suit*

Defendants also argue that the court should dismiss Wilcomb's § 1983 claims against the officers in their official capacities because those are "simply claims against the City." *Id.* at 4. Because the court agrees, Wilcomb's claims against the officers in their official capacities are DISMISSED. *See supra* Section III(A) n.5.

**C.   Wilcomb's claims against the City**

To state a claim for municipal liability under § 1983, Wilcomb must identify: (1) a policymaker; (2) an official policy or custom or widespread practice; and (3) a violation of constitutional rights whose "moving force" is the custom or policy.[9] *Monell*, 436 U.S. at 694. "Official policy establishes culpability . . . [and] it usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotation omitted). Additionally, to show a "moving force," Wilcomb must show "a direct causal link between the policy and the violation." *Id.* at 848.

Defendants advance three main arguments in favor of dismissal. Dkts. 12, 17. First, Defendants argue that "almost all of [Wilcomb's] claims arise from facts supporting *respondeat superior* theory of tort activities of the defendant officers, which is barred by § 1983, and therefore must be dismissed." Dkt. 12 at 10. Next, Defendants argue that Wilcomb pleads insufficient facts.[10]

---

[9]Wilcomb alleges that policymakers responsible for the at-issue polices, customs, and practices include "officers, the Internal Affairs Division, the Houston Police Chiefs, the Homicide Division, as well as a line of mayors . . . ." Dkt. 1 at 18. Construing this allegation in the light most favorable to Wilcomb, she satisfies the final policymaker element of municipal liability.

[10]Defendants argue that Wilcomb alleges no facts showing that: (1) an official policy existed; (2) one of the City's final policymaker's approved it; (3) the custom or policy was 'persistent,' 'often repeated,' or 'constant'"; and (4) it was deliberately indifferent to Gaubatz's rights. Dkt. 12. at 7–9.

Finally, Defendants argue that Wilcomb failed to allege enough incidents to establish a pattern or practice. Dkt. 17 at 3.

Wilcomb supports her municipal liability claim by alleging that "the City sanctions" at least twelve customs, practices, and policies.[11] Wilcomb also alleges that the City: (1) has a pattern and practice of allowing excessive force; (2) fails to train or supervise; and (3) has a policy and custom of dangerous recklessness. *See* Dkt. 1 at 15–22.

Defendants argue that "almost all of [Wilcomb's] claims arise from facts supporting *respondeat superior* theory of tort activities of the defendant officers, which is barred by § 1983, and therefore must be dismissed." Dkt. 12 at 10. Wilcomb alleges that the City is liable for the constitutional torts of its Officer Defendants *because* the City sanctions the following nonexclusive

---

Further, Defendants assert that no facts support a constitutional violation or explain how the City violated Gaubatz's rights. *Id.* And, Defendants argue that no allegations support her claims for failure-to-train and failure-to-supervise because "HPD provides training to all its officer [sic] at or above the standard set by the Texas Commission of Law Enforcement (TCOLE)." *Id.* at 10–11. Defendants also argue that Wilcomb did not "reference or connect their [sic] claims" to factual allegations about notice and failure to act. *Id.* at 12.

[11] Those polices, customs, and practices include: "(a) [u]sing excessive, and often deadly force to carry out otherwise routine arrests, searches, and seizures; (b) [a]rresting and booking (or attempting to book) individuals who need medical attention as opposed to law enforcement intervention; (c) [i]gnoring the serious need for training and supervision of officers with respect to when to seek medical treatment for individuals instead of arresting them – or the need for new . . . training and supervision that, in light of the duties assigned to the City's officers and their previous wrongful conduct, was so obviously needed that not providing it amounted to deliberate indifference; (d) [a]dopting training regimes unsuited to prepare officers to adequately reach medical solutions for persons requiring medical attention; (e) [f]ailing to properly investigate in-custody injuries and deaths; (f) [f]ailing to discipline officers who arrest individuals they should refer to medical treaters; (g) [f]ailing to train officers about how to handle people who are suspected of being mentally ill or who otherwise require medical attention; (h) [u]sing procedures to investigate complaints of official misconduct designed to prevent detecting official misconduct; (i) [e]stablishing a code of silence, where officers are discouraged from pointing out the wrongful conduct of other officers; (j) [f]ailing to adequately discipline or discharge officers who have shown a pattern or practice of using excessive force; (k) [p]romoting officers accused of misconduct at a higher rate than officers not so accused; and (l) [i]nstituting policies that prevent the City, Count, State, and Federal Government from adequately investigating in-custody deaths." Dkt. 1 at 15–16.

list of customs, practices, and policies . . . ." Dkt. 1 at 15–16 (emphasis added). The allegation has two parts: (1) that the City is liable for its officers' constitutional torts and (2) that the City is liable for sanctioning at least twelve unconstitutional policies. *See id.* at 15. Unquestionably, Wilcomb cannot recover for the first. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) ("Section 1983 offers no *respondeat superior* liability") (emphasis in original). Thus to the extent that Wilcomb alleges the City is vicariously liable for its officers' torts, that claim is DISMISSED WITH PREJUDICE.

Further, the court finds that Wilcomb has failed to state a claim for municipal liability because she has not alleged enough facts to support the policy, custom, or practice element of that claim.[12] *See Peterson*, 588 F.3d at 849, 851. Thus, the court DISMISSES that claim without prejudice and GRANTS Wilcomb leave to amend.

### IV. Conclusion

Defendants' motion to dismiss is GRANTED in part and DENIED in part. Dkt. 12. Thus, Wilcomb's claims against the individual officers in their official capacities as well as the claims against the City for vicarious liability are DISMISSED WITH PREJUDICE. Wilcomb's remaining claims against the City are DISMISSED WITHOUT PREJUDICE and the court GRANTS Wilcomb leave to amend those claims.

Signed at Houston, Texas on February 16, 2018.

Gray H. Miller
United States District Judge

---

[12] Wilcomb comes close to alleging sufficient facts on the failure to train officers "how to handle people with mental illness" or "how to identify those needing medical attention . . . ." *Compare* Dkt. 1 at 19, *with Peterson*, 588 3d. at 849. Allegations about context would be helpful. See *Peterson*, 588 F.3d 851 n.4.